## In re HIGGINS et al.

*(Circuit Court, S. D. New York. January 12, 1892.)*

1. CUSTOMS DUTIES—DUTY ON WOOL—SORTING.
    Tariff Act Oct. 1, 1890; construction of paragraphs 383, 385, 386.

2. SAME.
    The "sorting clause" (so called) of paragraph 383, Schedule K, Tariff Act Oct. 1, 1890, (26 U. S. St. p. 567,) applies to wools of all classes.

3. SAME.
    The term "sorting" in paragraph 383 means a changing of the original fleeces, and not a separation of wools as to color.

4. SAME.
    The provision that "the duty on wool which has ʋeen sorted shall be twice the duty to which it would be otherwise subject" means "twice the duty to which it would have been subject if it had not been sorted."

5. SAME.
    In applying the "sorting clause" to wools of the third class, which are subject to ad valorem duties, the value of the wool in an unsorted condition should be ascertained, and multiplied by twice the rate provided by law for wool of such value. *Arthur v. Pastor,* 109 U. S. 139, 3 Sup. Ct. Rep. 96, followed.

**6. SAME.**

The proviso in paragraph 383 that "wools on which a duty is assessed amounting to three times or more than that which would be assessed if said wool was imported unwashed, such duty shall not be doubled on account of its being sorted," applies to wools of all classes.

**7. SAME.**

Where sorted wool of class 3 is worth over 13 cents per pound, and the duty thereon at 50 per cent. *ad valorem*, under paragraph 386, amounts to more than three times the duty which could have been assessed upon it if it had been imported unwashed, double duty cannot be assessed upon it, under the sorting clause of paragraph 383.

*(Syllabus by the Court.)*

At Law. Appeal by collector from decision of board of United States general appraisers. Affirmed.

In April, 1891, Messrs. Higgins & Co., carpet manufacturers, in the city of New York, imported from Liverpool a quantity of carpet (third-class) wool. Some of these wools were gray, some yellow, and some white. The invoice price of the gray and yellow wools amounted to less than 13 cents per pound, and of the white wool to more than 13 cents per pound. On the entry of the merchandise they paid, as estimated duties, 32 per cent. *ad valorem* on the gray and yellow wools, under paragraph 385, Schedule K, Act Oct. 1, 1890, and on the white wool 50 per cent. *ad valorem*, under paragraph 386 of the same act and schedule. The United States local appraiser returned all these wools as "sorted wools," and thereupon the collector, acting under special instructions of the secretary of the treasury, (Synopsis Treas. Dec. § 11,307,) liquidated the duties at 64 per cent. upon the invoice value of the gray and yellow wools, (paragraphs 385, 383) and 100 per cent. upon the invoice value of the white wool, (paragraphs 386, 383.) Demand was made upon Higgins & Co. for upwards of $7,000 additional duties, which they paid under protest. The substantial averments of the protest were as follows:

*First.* We protest against the exaction upon the gray and yellow wool contained in said importations of more than 32 per cent. *ad valorem,* and upon the white wool contained in said importations of more than 50 per cent. *ad valorem,* on the ground that being wools of the third class, and valued, the gray and yellow at less, and the white at more, than 13 cents per pound, they are subject only to such rates, and no more, by virtue of paragraphs 385, 386, Schedule K, Act Oct. 1, 1890. *Second.* We further claim that none of our wools have been imported in other than ordinary condition, or changed in character or condition, for the purpose of evading the duty, or reduced in value by the admixture of dirt or any other foreign substance. *Third.* We protest against the application to our wool of the clause in paragraph 383, Schedule K, of said act, which provides that "the duty upon wool of the sheep * * * which has been sorted, or increased in value by the rejection of any part of the original fleece, shall be twice the duty to which it would be otherwise subject," etc., on the ground that said provision applies only to wools of classes 1 and 2, which are subject to specific duties. *Fourth.* We claim that the intent of the lawmakers in enacting the "sorting" clause above quoted is fully satisfied in the case of third-class wools, by the grading of the duties under the *ad valorem* system, as the increase of the rate from 32 per cent. to 50 per cent., and the increase of the values upon which the rate is assessed, makes the wools, after the colors have been separated, pay double the duty

which they would have paid if not separated. *Fifth.* We claim that none of the wools covered by said importation are "sorted," within the meaning of that term as used among merchants and dealers. We claim that the term "sorting," as used in commercial parlance and in the tariff, means a separation of parts of the fleece with reference to their quality and value, while in the case of our wools there has been simply a separation as to color, the white wools having been taken from the gray and yellow wools; and, even if the separation of the wools according to color could be held to be sorting, the result of that process in the case of our gray and yellow wools has been to decrease, and not increase, their value. *Sixth.* If the sorting clause of paragraph 383, above quoted, can be applied to third-class wools, then we claim that our wools are expressly excepted from the application of said clause by the terms of said paragraph, because the yellow wool is skirted wool as imported, and commercially known on and prior to October 1, 1890, and the white wool has already had assessed upon it a duty amounting to three times that which would be assessed if said wool was imported unwashed: *Seventh.* If the above-quoted sorting clause of paragraph 383 should be held applicable to our wools, then we claim that the exaction of 64 per cent, or 100 per cent. upon the invoice prices of our wools is illegal, and that it is the duty of the appraiser to ascertain and report what would be the value of our wools if the white wool had not been separated from the gray and yellow wools, which value, we assert, would be very much less than 13 cents per pound; and that, if the sorting clause can be applied to our wools, it is then your duty to assess 64 per cent. duty on the reduced valuation so ascertained by the appraiser, which duties we claim would be less than the duties at 32 per cent. and 50 per cent. already paid by us. *Eighth.* We claim that where goods are subject to a graded *ad valorem* duty, and the process of separating them has so increased the value of any of them as to advance them from one grade to another, no provision of law for doubling the duty to which they would be otherwise subject can justify you in doubling the rate of duty applicable to the higher grade, and assessing it upon the valuation as increased by the process of separation.

The protest was transmitted to the United States board of general appraisers, pursuant to section 14 of the act of June 10, 1890, (Customs Administrative Act; 26 U. S. St. p. 131,) and a hearing was had before them. It was proven that it had been for many years the custom in the wool markets of Liverpool to separate East India wools of this character according to their color, and that such wools were imported into this country so separated; that these wools had not been changed in their character or condition for the purpose of evading the duty, nor had they been reduced in value by the admixture of dirt or any other foreign substance; that, as to the gray and yellow wools, there had been no separation except as to color; that the white wool had been separated both as to color and quality; that the effect of separating gray and yellow wools from white wools was to reduce their value; that the white wool, as imported, was worth ninepence per pound, whereas, if it had not been sorted, its value would have been sixpence per pound, and, if it were unwashed, its value would be twopence per pound; and that all of said wools were intended to be used, and had in fact been used, to make carpets.

The board of appraisers decided: (1) That separating wools as to color was not "sorting," within the meaning of the law. (2) That the sorting clause applied to all classes of wool. (3) That the gray and yellow

evidence of any other change of legislative purpose so far as relates to printed books. By a literal construction of the present statute the petitioner's books seem entitled to free entry, because, having once been bound more than 20 years before importation, they comply with its precise terms, notwithstanding they may have been bound again. But it is not necessary to rely on the mere letter, as the considerations stated lead directly and naturally to a rational construction. *Church of Holy Trinity* v. *U. S.*, 143 U. S. 457, 463, 12 Sup. Ct. Rep. 511. Moreover, rebinding is not binding. The latter is new and original work; while, ordinarily, the former is repairing, and usually omits one or more of the recognized steps in the latter. If the United States claims that they all actually entered into the present case, it had the burden of showing this fact to the board of general appraisers. But, as it is apparent that these books were bound more than 20 years before importation as books of like character are usually bound before being offered for sale, I would regard them as entitled to free entry, even though it also appeared that, in consequence of accident or ordinary use, they had needed and received repairs in all respects equal in extent to new and original binding. I adopt the conclusions of the decision of the treasury department of March 2, 1891, (10,800) and hold that the books are entitled to free entry. The petitioner will prepare the proper order, and, if not agreed to, will submit it to the court for revision. For the present the order will be: Petitioner entitled to relief per order to be entered in compliance with the opinion of the court.